Thurman, C. J.
It seems to be a well-settled principle, that the purchaser of an incumbered estate, if he agree to take it subject to the incumbrance, and an abatement is made in the price on that .account, is bound to indemnify his grantor against the incumbrance, whether he expressly promise to do so or not — a promise to that effect being implied from the nature of the transaction. Tweddell v. Tweddell, 2 Bro. C. 154, margin; Woods v. Hungerford, 3 Ves. Jr. (Sumner’s ed.) 132, margin; Waring v. Ward, 7 Ves. Jr. (Sumner’s ed.) 337, margin ; Earl of Oxford v. Lady Rodney, 14 Ves. Jr. (Sumner’s ed.) 423, margin.
In the case before us, the agreed statement of facts is somewhat ^defective in not expressly showing whether there was an abatement in the price, on account of the mortgage to the Trust ■Company, upon the sales from Hamilton, the mortgagor, to Franklin, and from Franklin to Creen; nevertheless, we think that this ought to be presumed from the admitted facts, that both conveyances were expressly subject to the mortgage, and that Creen, in selling to Thompson, deducted the amount of the mortgage debt from the value of the lot, and made his conveyance expressly subject to the incumbrance. It is difficult to see why he made this abatement, unless he was bound to indemnify Franklin, or how he could be thus bound if the latter was under no obligation to indemnify Hamilton. For if there was no such liability, then Hamilton —not only as between himself and the Trust Company, but also as between himself and those claiming under him — was bound to pay the mortgage debt; and if he was able to do so — and there is no showing, in the case, to the contrary — the value of Creen’s estate was the full value of the lot; and it is not to be presumed that he would take less for it; much less, that he would abate over two-thirds of it.
Indeed, these conclusions are not gainsaid by the defendants’ counsel, for he does not deny the liability of either Franklin or Green; and the scope of his argument seems to admit it. Without laying any stress, however, upon this fact, we think their liability ought to be presumed for the reasons already stated.
*351 That Thompson became bound to indemnify Green is sufficiently obvious, and as Green was under a like obligation to Franklin, and the latter under a similar liability to Hamilton, the mortgagor, it follows that the only just method by which Thompson could perform his duty, was to discharge the mortgage debt. For although, as between the Trust Company and these several parties, it was-Hamilton’s debt; yet, as between Hamilton, Franklin, Green, and Thompson, it was, equitably, Thompson’s debt. And so he treated' it, for he paid the interest on it to the Trust Company, from the date of his purchase to the time of his death; and *it does-not appear that he ever asserted a claim against any one for reimbursement.
In the meantime he made his will, by which he directed his just debts to be paid out of his personal estate, and devised this lot tolos daughter Lucinda, then sole and unmarried, for her life, with remainder in fee to her children, should she die leaving any; but if she should leave none, then to his other children, and the survivors and survivor of them, for life ; and the remainder in fee to his grandchildren.
Upon this will — in the light afforded by the circumstances under which it was made and the subjects to which it relates — we are to-decide, whether the testator designed to provide that the mortgage debt aforesaid should be paid out of his personal estate. And wears unanimously of the opinion that he did, and that he employed-adequate terms to effect his intention. He expressly directed his-just debts to be paid out of his personal estate ; and although it may be true that, technically speaking, this was not his debt, yet. this is by no means decisive of the question. The terms of a will are not, of necessity, to be construed technically and with a strict reference to grammatical accuracy; but they are to be viewed sensibly and liberally, in order to give effect to the testator’s intentions. Of all the instruments that need the benefit of a liberal construction — a construction that prefers substance to mere form— wills need it the most.
Now we have seen that, substantially, this was Thompson’s-debt; that, justly and equitably, it was his, and that he must have so regarded it. What is more natural, then, than that he should call it, what he believed it to be, his debt, and that he should suppose it to be included in a direction to pay his debts ? That he did so suppose, we entertain no serious doubt. Not only for the- *352, 353 ¡reasons already given do we think so, but these reasons are greatly .strengthened by the other provisions of the will. The testator knew that the Trust Company could demand payment whenever .it chose to do so, and that, if payment should not be *made, the mortgage would be foreclosed and his devisees lose the estate. And although he might not have anticipated a speedy demand, yet he surely could not have presumed that it would be deferred until Bucinda’s death, and the enjoyment of the estate by her children, should she leave any; much less could he have supposed that it would be delayed until the fee should vest in his grandchildren, .should that event occur. And yet, by his various devises, he manifested the strongest possible wish that the property should remain .in his family — giving to none of his own children, in any event, more than a life estate, and limiting the fee to some, or all, of his grandchildren. This intention, so clearly exhibited and so well effectuated by various provisions, is wholly inconsistent with the idea that he meant that his devisees should have nothing but the ■equity of redemption. And besides, had that been his design, it is altogether probable that he would have said, in express terms, that they were to take subject to the mortgage. He had so taken, ■with a clause to that effect in his deed, and he would very likely have inserted a similar clause in drafting his devise; for it will hardly be imagined that he omitted to do so because he supposed it unnecessary. We have no reason to think that he was at all versed in the subtle distinctions and recondite learning that appear in the arguments before us, and that it was owing to his legal lore and sound judgment that he omitted what would have made his intention perfectly manifest. We can well enough understand how he could call that his debt, which -he regarded as such, and which was so in reality, though not technically, and, therefore, why it is that we do not find it specially provided in the will that his executors should pay it; but that he omitted to say that his devisees should take the lot, cum onere, because he knew that the .law would cast the burden on them if he did not expressly shift it, is what we do not believe.
We have seen that it was the intention of the testator to keep the property in his family, and that he could not reasonably .expect that the collection of the mortgage debt would be deferred *until the remainder-men should come into possession. It ¿follows, that if he designed to devise the estate, cum onere, he ex *354 pected the incumbrance to be removed by his daughter Lucinda ;, for he could not suppose that it would be removed by those to whom he had contingently devised a mere estate for life. But is it reasonable to believe that he expected her to discharge it? It amounted to over two-thirds of the value of the lot, and required a considerable sum of money to pay it off, and she was to have but a life estate. To discharge it would be to pay more than the life' estate would be worth, and the devise to her would be an injury instead of a benefit. At least this is the presumption arising upon the agreed statement of facts, and that is all we can look at. But a will is not to be so construed as to destroy all benefit from a devise, if it can consistently be avoided. “ As to wills,” said Chancellor Kent (in Cumberland v. Codrington, 3 Johns. Ch. 372), “the result of the cases seems to be, that the testator may, by express directions, charge such incumbrance upon his personal assets; or, even without express words, he may do it by dispositions and language that are tantamount; as if, for instance, the continuance of the charge primarily on the land, would be repugnant to some of' the provisions of the will, and defeat them.”
I have so far considered the case upon the assumption that Thompson did not expressly promise Green to pay the debt, that view of the case being the most favorable one for the defendant in error. If he did make such a promise, it was upon a sufficient consideration, and an action of assumpsit could have been maintained upon, it by the Trust Company — it being well settled, “that if one person makes a promise to another, for the benefit of a third person, that third person may maintain an action at law on that promise.” Cumberland v. Codrington, 3 Johns. Ch. 254, and cases there cited; Crumbaugh v. Kugler, 3 Ohio St. 549. And if such were the case, there could be no doubt that Thompson was a debtor for the money, and that his liability was .covered by the clause in his will directing; his debts to be paid. But it *is, to say the least of it, doubtful whether the agreed statement of facts would warrant us in finding that such an express promise was made, and we prefer to place oui* decision on the other view of the case, with which we are entirely satisfied.
The judgment of the common pleas must be reversed.